AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

| | |
|---|---|
| In the Matter of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>the location data for a T-Mobile cellular telephone<br>(More fully described in Attachment A) | )<br>)<br>)<br>)<br>)<br>) |

Case No.     Case: 2:22−mc−51508-1
Assigned To : Edmunds, Nancy G.
Filed: 9/30/2022
SEALED MATTER (LH)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property *(describe the property to be searched and give its location)*:

See ATTACHMENT A.

located in the _____Eastern_____ District of _____Michigan_____ , there is now concealed *(describe the property to be seized)*:

See ATTACHMENT B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |

See Affidavit. To ensure compliance with the Pen Register Statute, this Search Warrant Application sets forth requirements in 18 U.S.C. § 3122 and the Search Warrant acts as a Pen Register order under 18 U.S.C. § 3123. Accordingly, the undersigned attorney certifies: (i) he / she is an "attorney for the government," (ii) __ATF_____ is the law enforcement agency conducting the investigation, and (iii) the information sought is likely to be relevant to an ongoing investigation of this agency.

- ☑ Continued on the attached sheet.
- ☑ Delayed notice ___30___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Search Warrant Applicant's signature*

Special Agent Brett Brandon, ATF
*Agent's printed name and title*

_____
*Pen Register Applicant's signature*

Matthew Roth, Assistant United States Attorney
*AUSA printed name and title*

Search warrant sworn to before me and signed in my presence and/or by reliable electronic means.

Date: _____September 30, 2022_____

City and state:  Detroit, Michigan

_____
*Judge's signature*

Hon. David R. Grand,  U. S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR DEVICE ASSIGNED CALL NUMBER (947) 205-8603 by Service Provider, T-Mobile. | Case No.<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Brett J. Brandon, being first duly sworn, hereby depose and state as follows:

### EXECUTIVE SUMMARY

On September 18, 2022, Kevin Taesean BERRIOS-BENSON possessed a black pistol during a shooting that occurred in the Newman Court Apartments in Pontiac, Michigan. BERRIOS-BENSON did not fire his pistol during the incident. Shots were fired by a fellow gang member, standing in front of BERRIOS-BENSON. Nevertheless, BERRIOS-BENSON is a convicted felon, currently pending sentencing in Michigan Sixth Circuit Court.

Based on an ongoing and joint investigation between the Oakland County Sheriff's Office (OCSO) and the ATF, I know that BERRIOS-BENSON claims affiliation on social media with "R Block", a violent criminal street gang based in Pontiac, Michigan. Violence between R Block and their rival, "4 Block" has

-1-

resulted in over 60 shootings since July of 2021. Many of the shootings involved gang members shooting at and into occupied homes of rival gang members. On several occasions, children, parents, and grandparents have been home or shot during these episodes.

This affidavit seeks a search warrant to locate BERRIOS-BENSON's cellular phone. The location of his phone will assist law enforcement in locating BERRIOS-BENSON and further the investigation as to the location of his pistol, the distinctive clothing he wore while in possession of the pistol, his location before and after his possession of the firearm, and other evidence, all of which provide further evidence of violations of 18 U.S.C. § 922(g)(1) (Felon in Possession of a Firearm).

## I.   INTRODUCTION AND BACKGROUND

1.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ electronic investigative techniques, as described in the following attachment, to determine the location of the target cellular device assigned dialed number (947) 205-8603, referred to in this affidavit as the "Target Cellular Device." The service provider for the target cellular device is T-Mobile. This affidavit is made in support of up to two different search warrants to locate the phone: 1) by obtaining information from the service provider, e.g., cell site

information and 2) by utilizing a device that acts as a cell phone tower, sometimes referred to as a Cell Site Simulator. In addition, because this request may be construed as a Pen Register / Trap and Trace device or request, the application for this warrant (which includes this affidavit) is intended to comply with 18 U.S.C. § 3122.

2.     I have been a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, United States Department of Justice, assigned to the Detroit Field Division since July 2013. I graduated from the Criminal Investigator Training Program and the ATF Special Agent Basic Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia. During my employment with ATF, I have conducted and/or participated in numerous criminal investigations focused on firearms, drug trafficking violations, and criminal street gangs.

3.     I am currently assigned to the Pontiac Gun Violence Task Force (GVTF), a task force established by the Oakland County Sheriff's Office (OCSO) and ATF. The GVTF is tasked with investigating the unlawful possession of firearms and violent firearm crimes committed within the city of Pontiac. During my employment with ATF, I have conducted and/or participated in hundreds of criminal investigations that involved the possession and use of firearms, drug trafficking violations, and criminal street gangs.

4.      I also have experience in the investigation, apprehension, and prosecution of individuals involved in federal and state criminal offenses, the use of cellular devices to commit those offenses, and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location. I have authored or assisted in the authoring of dozens of federal search warrant affidavits for pen registers, trap and traces, E-911/geolocation information, call detail records, and the use of a cell site simulator or Wifi geolocation device.

5.      The facts in this affidavit come from my personal observations, training, experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.      There is reason to believe that the Target Cellular Device is currently located in the Eastern District of Michigan because Kevin Taesean BERRIOS-BENSON (XX/XX/2003) —the user of the Target Cellular Device—is known to spend most of his time in this district, primarily in Pontiac and Roseville, Michigan. BERRIOS-BENSON recently reported to the Michigan Department of Corrections his address as 17738 Roseville Boulevard, Roseville, Michigan. Additionally, on September 17, 2022, BERRIOS-BENSON filmed a music video on N. Edith Street in Pontiac. On September 18, 2022, he was also observed on

-4-

surveillance video during a shooting at an apartment complex in Pontiac. Finally, the area code "947", assigned to the Target Cellular Device, serves Oakland County, Michigan.

7.      Based on the facts set forth in this affidavit, there is probable cause to believe that BERRIOS-BENSON, a convicted felon, aware of his felony conviction, knowingly and intentionally possessed a firearm, in violation of 18 U.S.C. § 922(g)(1). I know from training and experience that cell phone users normally have their cell telephones on their person or near them. Accordingly, locating a user's cell phone will ordinarily show that user's location. I believe that locating the Target Cellular Device will constitute and lead to evidence of a violation of 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm. As a result, I am requesting a search warrant to locate the Target Cellular Device.

## II.  SUMMARY OF THE INVESTIGATION

A.    Criminal history and background as to BERRIOS-BENSON

8.      On August 16, 2022, BERRIOS-BENSON pleaded guilty in Michigan's Sixth Judicial Circuit Court to felony Carrying a Concealed Weapon. A sentencing date is currently set for October 4, 2022.

9.      I am aware of BERRIOS-BENSON's appearance and stature based upon the ongoing investigation into the R Block criminal street gang. I have also

-5-

reviewed a Michigan Secretary of State image of BERRIOS-BENSON dated July 24, 2021.

10.     On or about September 19, 2022, BERRIOS-BENSON utilized the Target Cellular Device to contact the Michigan Department of Corrections regarding his pre-sentence investigation report. BERRIOS-BENSON identified the number as his phone number during the interaction. Additionally, on September 28, 2022, BERRIOS-BENSON spoke to the Michigan Department of Corrections using the Target Cellular Device and confirmed his phone number as the call number assigned to the Target Cellular Device.

11.     On September 28, 2022, ATF Intelligence Research Specialist Michael Malone queried several open-source databases and identified T-Mobile as the carrier for the Target Cellular Device. The subscriber of the Target Cellular Device is listed as "WIRELESS CALLER". The phone has only been active for approximately one month.

B.      Shooting at the Newman Court Apartments

12.     OCSO Detective Bader was investigating a shooting, unrelated to this investigation, that occurred on September 18, 2022, in the Newman Court Apartments in Pontiac. During his review of surveillance video, he discovered that a separate shooting occurred that same date at approximately 3:44 a.m. The

separate shooting involved known members of the R Block criminal street gang. I
reviewed the same surveillance video and made the below observations.

13.     At approximately 2:58 a.m., BERRIOS-BENSON arrived in the
northwest parking lot driving a black GMC SUV. BERRIOS-BENSON exited the
vehicle wearing a white Toronto Raptors Tracy McGrady basketball jersey, a white
hat, blue jeans, and white shoes. While standing near the open driver's door,
BERRIOS-BENSON took his right hand and moved it toward his right waistband
area. BERRIOS-BENSON then closed the driver's door, walked to the rear of the
vehicle, and pulled his shirt over his right waistband area. BERRIOS-BENSON
used his right hand and took several seconds to adjust his waistband and pants as
he walked behind the SUV. He adjusted his right waistband area a second time,
pulled his pants up, and pulled his shirt down over his waistband area. As
BERRIOS-BENSON walked, he repeatedly touched his right waistband area and
adjusted his shirt. Based on my training and experience investigating the illegal
possession of firearms, BERRIOS-BENSON's movements were consistent with
someone concealing a pistol in their waistband.

14.     At approximately 3:05 a.m., BERRIOS-BENSON and others were
gathering when an OCSO marked unit pulled into the parking lot of the apartment
complex. Immediately thereafter, BERRIOS-BENSON, and two other known R
Block gang members, ran back to the area of the GMC. BERRIOS-BENSON

opened the driver's door. Standing between the open door and the vehicle, he extended his right arm forward, then closed the driver's door. BERRIOS-BENSON and several others then walked back toward the area where they initially gathered. I believe BERRIOS-BENSON took a firearm from his waistband area and put it in the car in response to the presence of law enforcement at the apartment complex.

15.     At approximately 3:19 a.m., BERRIOS-BENSON and a known R Block associate walked back to the GMC SUV. BERRIOS-BENSON opened the driver's door and leaned toward an area near the driver's seat. BERRIOS-BENSON then closed the driver's door and proceeded to adjust his waistband and pull up his pants. As BERRIOS-BENSON and his associate walked westbound on the sidewalk, BERRIOS-BENSON used his right and left hands to adjust his waistband area then pull his shirt over that area.

16.     Just before 3:44 a.m., a white mini-van parked near the group of R Block members, then pulled out of a parking spot. The mini-van drove north and west through the parking lot. At the same time, BERRIOS-BENSON walked in the same direction on the sidewalk with several individuals. The surveillance video depicted BERRIOS-BENSON likely holding a black pistol in his right hand. BERRIOS-BENSON continued walking while he used his right hand to tuck the pistol into his right waistband area. At roughly the same time, the driver of the white mini-van fired one shot into the air.

17.     Immediately after the shot from the mini-van, BERRIOS-BENSON retrieved the pistol from his waistband. BERRIOS-BENSON placed two hands on his pistol and assumed a low-ready pistol grip while he pointed the firearm down toward the sidewalk. Simultaneously, another known member of R Block retrieved a black pistol from his hooded sweatshirt pocket.

18.     Several seconds later, an occupant of the white mini-van appeared to fire a second shot. In response, the other armed R Block gang member with BERRIOS-BENSON fired several times. BERRIOS-BENSON, who had his pistol in his right hand, pointed the pistol toward the direction of the mini-van. BERRIOS-BENSON and the others ran into an alcove between nearby apartments.

19.     At approximately 3:45 a.m., the group exited the alcove and a majority of the individuals, including BERRIOS-BENSON, walked northbound on the sidewalk. Again, BERRIOS-BENSON held his pistol in his right hand. BERRIOS-BENSON then ran through the parking lot, back to his GMC SUV. With the pistol concealed under his shirt, he entered the driver's seat and departed the area. Image 1, below, shows BERRIOS-BENSON, at the apartment complex, with his pistol.

Image 1



C.     September 21, 2022 rap music video

20.     On September 21, 2022, I reviewed a rap music video titled "Glizzy Kev x Rb Kody – Rerock (Official Video)" posted to YouTube by YouTube User ID "Glizzy Kev". I am aware based on the ongoing investigation into the R Block criminal street gang that BERRIOS-BENSON utilizes the rap name "Glizzy Kev". A fellow R Block gang member utilizes the rap name "RB [R Block] Kody". In the video, BERRIOS-BENSON wore the same clothing from the September 18 surveillance video. See Image 2 below.

-10-

Image 2



21.     At several points during the music video, I observed an "L" shaped

bulge consistent with the slide and handle of a pistol in BERRIOS-BENSON's

right waistband area. I could clearly observe the pistol around the 1:44 seconds

mark. See Image 3 below. The background throughout the music video was

identified as a parking lot/industrial garage located in Pontiac.

Image 3

 

22.     I am aware, based on training and experience investigating the illegal

possession of firearms, that individuals who are prohibited from possessing

firearms store those firearms in their homes, vehicles, and/or on their persons so that the firearms are easily accessible. In this instance, BERRIOS-BENSON possessed the firearm both on his person and inside a vehicle.

23.     On numerous occasions, I have participated in investigations in which federal search warrants were obtained for the homes of prohibited persons, after monitoring social media accounts of the prohibited persons possessing firearms. Individuals who are prohibited from possessing firearms often post videos and images to social media documenting their possession of firearms. Later, they are frequently found in possession of those same firearms during search warrants, arrests, and other encounters with law enforcement. In my experience, law enforcement repeatedly recovers at least some of the firearms that were depicted, by these individuals, on social media.

24.     For example, in February 2022, the OCSO observed BERRIOS-BENSON in possession of a pistol on social media. Shortly thereafter, he was arrested in possession of the same pistol while leaving a R Block music video shoot.

25.     BERRIOS-BENSON has again uploaded an image of himself with a firearm from the September 17, 2021, rap video. As stated above, he is seen in possession of a pistol in his waistband. (See Image 3).

26.     I am aware the Target Cellular Device is an Apple iPhone and capable of accessing and posting images and videos to social media, including YouTube.

### III. <u>AUTHORIZATION REQUEST & MANNER OF EXECUTION</u>

27.     I request that the Court issue the proposed search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c). The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachment A for each communication to or from the Target Cellular Device, without geographic limit, for a period of forty-five days (45) days pursuant to 18 U.S.C. § 3123(c)(1).

28.     Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), this application and the accompanying warrant are intended to comply with requirements set forth in 18 U.S.C. §§ 3122-3123.

29.     In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain

signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

30.     In my training and experience, I have learned that T-Mobile is a company with its headquarters located within the United States and provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

-14-

31.     Based on my training and experience, I know that T-Mobile can collect cell-site data on a prospective basis about the Target Cellular Device. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

32.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a

-15-

cellular antenna or tower – can be recorded by pen-trap devices and indicate the

identity of the cellular device making the communication without revealing the

communication's content

33.     To facilitate execution of this warrant, law enforcement may use an

investigative device or devices (sometimes referred to as a Cell Site Simulator)

capable of broadcasting signals that will be received by the Target Cellular Device

or receiving signals from nearby cellular devices, including the Target Cellular

Device. Such a device may function in some respects like a cellular tower, except

that it will not be connected to the cellular network and cannot be used by a cell

phone to communicate with others. The device may send a signal to the Target

Cellular Device and thereby prompt it to send signals that include the unique

identifier of the device. Law enforcement may monitor the signals broadcast by the

Target Cellular Device and use that information to determine the Target Cellular

Device's location, even if it is located inside a house, apartment, or other building.

34.     The investigative device may interrupt cellular service of phones or

other cellular devices within its immediate vicinity. Any service disruption to non-

target devices will be brief and temporary, and all operations will attempt to limit

the interference with such devices. In order to connect with the Target Cellular

Device, the device may briefly exchange signals with all phones or other cellular

devices in its vicinity. These signals may include cell phone identifiers. The device

will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

35.    Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates, times and

sometimes, places, of payments and the means and source of payment (including any credit card or bank account number).

36.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cellular Device would seriously jeopardize the ongoing investigation. Such disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. See 18 U.S.C. § 3103a(b)(1). There is a reasonable necessity for the use of the techniques described. See 18 U.S.C. § 3103a(b)(2). As further specified in the attachment, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. See 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is a reasonable necessity for that seizure. See 18 U.S.C. § 3103a(b)(2).

37.     I further request the following information from the service provider: all precision real-time location information, including E-911 Phase II data, GPS data, and latitude-longitude data, and real time cell site information; call detail records, including cell site location information for the past 60 days; subscriber information and extended subscriber information; handset information; and per call measurement data, timing advanced/true call, RTT, NELOS for the past 30 days.

38.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cellular Device outside of daytime hours.

39.     I further request that the Court order all documents in support of this application, including the affidavit and search warrant, be sealed until further order by the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. I further request that the Court order any service provider, or their representatives, not to disclose the existence of this warrant or investigation unless ordered to do so by the Court.

40.     A search warrant may not be legally necessary to authorize all of the investigative techniques described. Nevertheless, I submit this warrant application out of an abundance of caution.

-19-

## IV.  **CONCLUSION**

41.    Probable cause exists that BERRIOS-BENSON, a convicted felon, aware of his felony conviction, did knowingly and intentionally possess a firearm in violation of 18 U.S.C. § 922(g)(1). Further, probable cause exists that BERRIOS-BENSON's cellular device - the Target Cellular Device – will assist law enforcement in locating BERRIOS-BENSON and assist in determining the location of the firearm, the clothing worn during the possession of the firearm, as well as his location before, during, and after his possession of the firearm during the shooting incident.

42.    There is also probable cause to believe that the location information associated with the Target Cellular Device will assist in identifying previous locations corresponding to the date and time that BERRIOS-BENSON possessed the above referenced firearm. Furthermore, the current location of the Target Cellular Device will assist in locating BERRIOS-BENSON in an effort to obtain evidence of the subject offense, to include the subject firearm, ammunition, clothing, and the Target Cellular Device, among other items. GPS/E-911 data will assist agents in determining BERRIOS-BENSON's general location, but the data is often too broad to pinpoint the device at a specific location or residence. I believe

the use of the cell simulator will assist in accurately locating the device in order to

apply for a search warrant for additional evidence of the subject offense.

Respectfully submitted,

_____
Brett J. Brandon, Special Agent
Bureau of Alcohol, Tobacco, Firearms
and Explosives

Sworn to before me and signed in my
presence and/or by reliable electronic means.

_____
HON. DAVID R. GRAND
UNITED STATES MAGISTRATE JUDGE

September 30, 2022

-21-

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the Target Cellular Device assigned phone number (947) 205-8603, whose wireless provider is T-Mobile.

This Warrant also serves as a Pen Register order under 18 U.S.C. § 3123. The Court makes the following findings: KEVIN TAESEAN BERRIOS-BENSON is the person to whom the pen register or trap and trace device is to be attached/applied and who is the subject of the criminal investigation; (947) 205-8603 is the phone number to which the device is to be attached; and 18 U.S.C. § 922(g)(1), is the offense, or one of the offenses, to which the information relates; and

The attorney for the government has certified to this Court that the information likely to be obtained by the installation and use of the pen register or trap and trace device is relevant to an ongoing criminal investigation by the Bureau of Alcohol, Tobacco, Firearms and Explosives.

-1-

# ATTACHMENT B

## Particular Things to Be Seized
## from Cell Phone Service Provider

1.      Information about the Target Cellular Device and its location, later referred to collectively as location information, to include all precision location information, E-911 Phase II data, GPS data, latitude-longitude data, per call measurement data (PCMD, RTT, True Call, NELOS, or equivalent), and real time cell site information for 30 days, beginning from the date the warrant was issued. The information includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. § 3123 by the service provider and the Bureau of Alcohol, Tobacco, Firearms and Explosives. Because the request for such location data may include use of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41. The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

2.     To the extent that the information described is within the possession, custody, or control of the service provider, the service provider is required to disclose all location information to the government.

3.     All subscriber, extended subscriber, handset information, and WI-FI MAC address, as well as all technical assistance necessary to accomplish the collection of the location information unobtrusively and with as little interference as possible. This includes initiating a signal to determine the location of the target cell phone on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times directed by the government.

4.     Call detail records, SMS/Text, and data including cell site location information, for the past sixty (60) days. Per Call Measurement Data, Timing Advanced/True Call, RTT, NELOS and real time cell site information for the past 30 days through the expiration of this warrant. The government shall compensate the service provider for reasonable expenses incurred in furnishing such facilities or assistance. Any service provider or representative who gains access to the information in this warrant shall not disclose the existence of the warrant or investigation unless disclosure is to their attorneys for purposes of seeking legal advice or disclosure is explicitly allowed / ordered by the Court.

5.      Service provider is required to disclose all business records and

subscriber information, in any form kept, pertaining to the individual

accounts, including subscribers' full names, address, shipping addresses,

date account was opened, length of service, the types of service utilized,

ESN (Electronic Serial Number) or other unique identifier for the wireless

device associated with the account, Social Security number, date of birth,

driver's license, telephone numbers, and other identifiers associated with the

account. All payment information, including source of payments (including

any credit or bank account number). Any and all special features, for any

numbers dialed or pulsed from and to the target telephone for the past sixty

(60) days.

6.      This warrant does not authorize the seizure of any tangible property.

In approving this warrant, the Court finds reasonable necessity for the

seizure of the information described. *See* 18 U.S.C. § 3103a(b)(2).

AO 93 (Rev. 11/13) Search and Seizure Warrant

AUSA:     Matthew Roth         Telephone: (313) 226-9186
Special Agent:   Brett Brandon (ATF)   Telephone:  (313) 202-3400

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

In the Matter of                                    )
*(Briefly describe the property to be searched*     )
*or identify the person by name and address)*       )        Case No.
                                                    )
the location data for a T-Mobile cellular telephone )
(More fully described in Attachment A)              )
                                                    )

Case: 2:22−mc−51508-1
Assigned To : Edmunds, Nancy G.
Filed: 9/30/2022
SEALED MATTER (LH)

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

        An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the _____ Eastern _____ District of _____ Michigan _____ .
*(describe the property to be searched and give its location)*:

See ATTACHMENT A.

        I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the property described
above, and that such search will reveal *(describe the property to be seized)*:

See ATTACHMENT B, violations of: 18 U.S.C. § 922(g)(1) Felon in Possession of a Firearm

        This Warrant, including its attachments, also serves as a Pen Register order under 18 U.S.C. § 3123. The Court makes
the following findings: Kevin BERRIOS-BENSON _____ is the person to whom the pen register or trap and trace device is to be
attached/applied and who is the subject of the criminal investigation; ( 947 ) 205 - 8603 _____ is the phone number to which the
device is to be attached; and _18_ U.S.C. § 922(g)(1) is the offense, or one of the offenses, to which information relates.

        **YOU ARE COMMANDED** to execute this warrant on or before   October 14, 2022 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

        Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

        The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to  the presiding United States Magistrate Judge on duty  .
                                                                                *(United States Magistrate Judge)*

        ☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*
☑ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:       September 30, 2022    3:38 pm          _____
                                                                          *Judge's signature*

City and state:    Detroit, Michigan _____          Hon. David R. Grand,  U. S. Magistrate Judge
                                                                      *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

---

**Certification**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*